**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
***Southern Division***

**INTERSTATE FIRE AND CASUALTY COMPANY** *

**Plaintiff,** *

**v.** * **Case No.: GJH-13-3908**

**DIMENSIONS ASSURANCE LTD.** *

**Defendant.** *

* * * * * * * * * * * * *

## MEMORANDUM OPINION

Plaintiff Interstate Fire and Casualty Company ("IFCC") is the insurer of Favorite Healthcare Staffing ("FHS"), and Defendant Dimensions Assurance, Ltd. ("Dimensions") has a reimbursement agreement with Laurel Regional Hospital (the "Hospital"). *See* ECF No. 32-1 at 4.[1] IFCC brings this action against Dimensions to recoup the costs of defending a medical malpractice claim against a nurse who was working at the Hospital pursuant to a staffing agreement between FHS and the Hospital. *Id.* The parties have filed cross motions for summary judgment. *See* ECF No. 25 & 35. The Court finds that a hearing is unnecessary. *See* Local Rule 105.6. For the reasons stated below, Plaintiff's Motion for Summary Judgment, ECF No. 25, is DENIED, and Defendant's Motion for Summary Judgment, ECF No. 35, is GRANTED.

## I. BACKGROUND

The material facts of this case are not in dispute. Defendant Dimensions contracted to provide reimbursement insurance coverage to a list of named protected persons, which included

[1] All pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

the Hospital, from January 1, 2010 to January 2, 2011.[2] *See* ECF No. 25-10 at 30 & 45. The contract included three Reimbursement Agreements—one for general liability, one for hospital professional liability, and one for group physician professional liability. *See id.* at 2–3. Subject to specified limitations, Dimensions agreed to reimburse the Hospital, under the hospital professional liability agreement, for amounts any "protected person" was legally required to pay as damages in suits resulting from professional injury. *See id* at 28. The hospital professional liability agreement also contains a section on "worker protection," which states:

> Your present and former *employees*, students and authorized volunteer workers are *protected persons* while working or when they did work for you within the scope of their duties. Unless added by amendment to this Agreement, interns, externs, residents, or dental osteopathic or medical doctors are not named protected persons for professional injury, even if they are your employees, students or authorized volunteer workers.

*Id.* at 31 (emphasis added).[3] The term "employees" is not defined in the contract. Notably, however, affiliated healthcare providers are specifically excluded from coverage unless there is "a written partnership or physician agreement" designating them as named protected persons. *See id.* at 30. An affiliated healthcare provider is "any natural person or organization in the business of rendering healthcare services directly to the general public, and who or which has an agreement to provide such services in conjunction with those provided by [the Hospital]." *Id.* In the provision excluding affiliated healthcare providers from coverage, the agreement also states

---

[2] The other named protected persons include Dimensions Healthcare System, Dimensions Health Corporation, Madison Manor, Inc., Prince George's Hospital Center, Laurel Regional Hospital, Bowie Health Center, Gladys Spellman Specialty Hospital and Nursing Center, First National Bank of Maryland (but only while acting on behalf of the named protected person), Affiliated Enterprise, Inc., Dimensions Affiliated Physicians, Inc., Dimensions Assurance, Ltd., Manufacturers and Traders Trust Company (but only while acting on behalf of the named protected persons), and Dimensions Healthcare Associates, Inc. (only for Reimbursement Agreement A & C). *See* ECF No. 25-10 at 45.

[3] This section was amended to include "employed or volunteer physicians, residents, interns or dental or osteopathic medical doctors" as protected persons. *See* ECF No. 25-10 at 46.

specifically that "[a]gencies providing clinical and other services on a per diem or contracted basis are not protected persons . . ." *Id.*

The general liability reimbursement agreement between Dimensions and the Hospital covers claims for damages for bodily injury, property damages, or fire damages. *See id.* at 11. Like the hospital professional liability agreement, it also contains a section on worker protection. *See id.* at 16. In contrast to the hospital professional liability agreement, however, this section specifically excludes employees of contract agencies from protection. It provides that

> Your present and former employees, students and authorized volunteer workers are protected persons while working, or when they did work for you within the scope of their duties. *Persons working for you on a per diem, agency or contract basis are not protected persons.*

*Id*. at 16 (emphasis added) (emphasis in original omitted). The general liability agreement also specifically states, as the professional liability agreement does, that "agencies providing per diem, contracted clinical, or contracted services are not protected persons under this agreement." *Id.* at 15.

On April 1, 2007, the Hospital entered into a staffing agreement with FHS for FHS to provide the Hospital with nurses to accommodate the Hospital's additional staffing needs. *See* ECF No. 25-3 at 2:¶ 1.2. As part of the agreement, FHS and the Hospital agreed that "[u]nder no circumstances will [FHS] practitioners be considered employees of H[ospital]. At all times, [FHS] staff are and will be considered employees of [FHS]." *Id.*[4] Under the employment status portion of the agreement, FHS and the Hospital agreed that "[p]ractitioners shall be deemed employees of [FHS] . . . . Practitioners shall in no event be considered employees of H[ospital] for purposes of compensation, benefits, or otherwise. [FHS] shall be solely responsible for the

[4] This language is repeated at 2:¶ 2.1.

actions or omissions of any practitioner." *Id.* at 5:¶ 7. FHS agreed that it would obtain general and professional liability insurance for its employees. *Id.* at ¶ 7.3. FHS employees were not eligible for Hospital benefit plans and were to be paid by FHS. *Id.* at ¶¶ 7.0–7.2. In the event that the Hospital was found liable on the grounds of apparent agency or vicarious liability for the acts or omissions of an FHS employee, the Hospital's insurance was to be passive and secondary to FHS' insurance, which was to be active and primary. *Id.* at ¶ 8.1.

The staffing agreement further indicated that the Hospital was to orient each FHS nurse to their job responsibilities and "all policies and procedures necessary to meet H[ospital] performance standards." *See id.* at 4:¶ 3.3. Additionally, starting on their first day of work, all FHS nurses were responsible for knowing the Hospital's policies and procedures. *See* ECF No. 25-4 at 7:18-8:1. The Hospital expected FHS nurses to provide the same standard of care as direct hire nurses, and had the right to terminate a nurse immediately for not complying with directions for patient care. *See id.* at 9:1-5 & 11:5-9. Also, no FHS supervisors were on site at the Hospital to provide direction to the FHS nurses. *See id.* at 14:10-20.

Effective September 10, 2010, Plaintiff IFCC agreed to provide FHS with professional liability insurance coverage. *See* ECF No. 25-11 at 3 & 51. Subject to some limitations, IFCC agreed to pay legally required "damages" for "bodily injury" for FHS, the named insured. *See id.* Additionally, "current or former employee[s]" are also named insureds when acting within the "employees' duties." *See id*. at 3–4. If other valid insurance could also apply to a loss or claim that was covered under IFCC's policy, the IFCC insurance was to be excess insurance over and above the applicable limit of the other valid insurance. *See id.* at 11–12.

On February 16, 2012, a lawsuit was filed against the Hospital, several doctors, and nurses, alleging negligent care and treatment. *See* ECF No. 25-6. One of the nurses was working

at the Hospital as a result of the Hospital's agreement with FHS. *See id.* at 15. The lawsuit named FHS as vicariously liable for the nurse's actions. *See id.* On February 20, 2013, the FHS nurse demanded that the Hospital and Dimensions provide defense and indemnity coverage. *See* ECF No. 25-7. Dimensions refused and FHS's insurance, IFCC, defended the FHS nurse. *See* ECF No. 32-1 at 9.[5] IFCC filed this lawsuit to recoup from Dimensions the costs incurred in that defense. *See* ECF No. 1.

## II. STANDARD OF REVIEW

Summary judgment is proper if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). When cross motions for summary judgment are filed, the same standards of review apply. *Bryant v. Better Bus. Bureau of Greater Maryland, Inc.*, 923 F.Supp. 720, 729 (D. Md. 1996). The Court must deny both motions if questions of material fact exists. *Id.* "However, when cross-motions for summary judgment demonstrate a basic agreement concerning what legal theories and material facts are dispositive, they 'may be probative of the non-existence of a factual dispute.'" *Id.* (quoting *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983)).

---

[5] Plaintiff originally filed its memorandum in support of its motion for summary judgment under seal. The Court ordered Plaintiff to file a redacted version, which is found at ECF No. 32. *See* ECF No. 29 & 30. While the parties filed subsequent papers without redaction, the originally redacted information, such as the name of the nurse and details of the underlying lawsuit, is not relevant to the Court's opinion. Thus, the Court will avoid using the information that has been redacted from the Plaintiff's first submission.

Here, both parties request summary judgment in their favor based on an issue of contract interpretation. *See* ECF Nos. 32-1 & 34. "The first step for a court asked to grant summary judgment based on a contract's interpretation is . . . to determine whether, as a matter of law, the contract is ambiguous or unambiguous on its face." *Wash. Metro. Area Transit Auth. v. Potomac Inv. Props., Inc.*, 476 F.3d 231, 235 (4th Cir.2007) (quoting *Goodman v. Resolution Trust Corp.*, 7 F.3d 1123, 1126 (4th Cir.1993)). If the contract is unambiguous, the Court can interpret the contract as a matter of law. *Id.* If the contract is ambiguous, the court may examine extrinsic evidence of the parties' intent. *Id.* At that point, the extrinsic evidence can either be dispositive as a matter of law or can leave genuine issues of material fact respecting the contract's proper interpretation. *Id.* In the latter case, summary judgment should be denied. *Id.* In sum, "summary judgment is appropriate when the contract in question is unambiguous or when an ambiguity can be definitely resolved by reference to extrinsic evidence." *Id.*

## III. DISCUSSION

The sole issue in this case is whether Dimensions should have covered the defense and settlement costs of the lawsuit against the FHS nurse. IFCC contends that Dimensions should have covered these costs because its reimbursement agreement with the Hospital covers agency nurses. *See* ECF No. 32-1 at 17. Dimensions asserts that the professional liability reimbursement agreement only covers *Hospital* employees and the FHS nurse was not a Hospital employee. *See* ECF No. 34 at 12.

Under Maryland law, "[a]n insurance policy is a contract and is construed subject to the principals of contract interpretation."[6] *People's Ins. Counsel Div. v. State Farm Fire and Cas.*

---

[6] While Dimensions maintains that the reimbursement agreement with the Hospital is not an insurance policy, it concedes that case law interpreting insurance contracts is applicable. *See* ECF No. 34 at 12–19.

*Ins. Co.*, 76 A.3d 517, 526 (Md. Ct. Spec. App. 2013) (citation omitted). Maryland law applies an objective interpretation of contracts. *Walker v. Dep't of Human Res.*, 842 A.2d 53, 61 (Md. 2004). Under this interpretation, the court is focused on determining the intent of the parties with the language of the contract being the primary source for identifying this intent. *Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 253, 260 (4th Cir.2005). "[T]he intention of the parties is to be ascertained if reasonably possible from the policy as a whole." *Cheney v. Bell Nat. Life. Ins. Co.*, 556 A.2d 1135, 1138 (Md. 1989). Each clause "shall be given force and effect . . . to create a harmonious and coherent whole." *Prince George's Cnty. v. Local Gov't Ins. Trust*, 859 A.2d 353, 358 (Md. Ct. Spec. App. 2004), *aff'd*, 879 A.2d 81 (Md. 2005).

Here, IFCC argues that because Dimensions' contract with the Hospital specifically excludes coverage for agency employees in its general liability agreement, the lack of such a specific exclusion in the hospital professional liability agreement is unambiguous evidence that such employees are included in that agreement. *See* ECF No. 32-1 at 20–21. The Court disagrees.

Dimensions' contract with the Hospital states that "each agreement is to be read and interpreted separately and independently of the other." *See* ECF No. 25-10 at 7. Reading the professional liability agreement as an independent whole, it appears that the parties did not intend to extend professional liability coverage to contracted workers. For instance, the policy specifically excludes affiliated healthcare providers from coverage. *See* ECF No. 25-10 at 30. An "affiliated healthcare provider" is "any natural person or organization" providing "healthcare services" who "has an agreement to provide such services in conjunction with those provided by [the Hospital]." *See id.* at 30. No party contests that the nurse was a natural person, that she provided healthcare services, and that her services were provided pursuant to an agreement

between FHS and the Hospital. Indeed, Dimensions' professional liability agreement with the Hospital provides that "[a]gencies providing clinical and other services on a per diem or contractual basis are not protected persons under this agreement." *See* ECF No. 25-10 at 30. Since FHS was an "affiliated healthcare provider," and the parties did not designate FHS as a protected person, it does not stand to reason that the parties intended to designate FHS' employees as protected persons.

In addition to contending that the contract specifically includes contract workers, IFCC argues that Dimensions' professional liability agreement covers all employees and that the FHS nurse was an employee of the Hospital under Maryland's borrowed servant doctrine. *See* ECF No. 32-1 at 25–26. IFCC correctly asserts that, under the principals of contract interpretation, specific words and terms are given their ordinary and accepted meaning. *Id.* at 21 (citing *Klein v. Fidelity & Deposit Co. of Am.*, 700 A.2d 262, 270 (Md. Ct. Spec. App. 1997)) (additional citation omitted). It is common practice for courts to consult dictionary and common law definitions to determine the accepted meaning of words in a contract. *See id.* (citing *Interstate Fire & Cas. Co. v. Washington Hosp. Ctr. Corp.*, 758 F.3d 378, 386 (D.C. Cir. 2014) & *Steigler v. Eureka Life Ins. Co.*, 127 A. 397, 402 (Md. 1925)). IFCC contends that "employee" is an unambiguous term that encompasses a "borrowed servant." *Id.* at 25–26. For support, IFCC cites *Interstate Fire & Cas. Co.*, where the United States Court of Appeals for the District of Columbia Circuit found that the definition of "employee" included "borrowed servant." *Interstate Fire & Cas. Co.*, 758 F.3d at 384–86. Thus, IFCC contends, if the FHS nurse qualifies as a borrowed employee of the Hospital under Maryland's borrowed servant doctrine, she was an employee of both FHS and the Hospital. *See id.* at 25–26. Dimensions agrees that the term employee is unambiguous and the Court should look to Maryland's borrowed servant doctrine to

define employee. *See* ECF No. 34 at 9. But Dimensions asserts that it is entitled to summary judgment, under that analysis, because the FHS nurse does not qualify as a borrowed servant of the Hospital. *See id.* at 10–14.

The borrowed servant doctrine is an agency law principle. Under the borrowed servant doctrine, an employee can be in the "general service" of one employer while also serving a "third person" who takes on the "legal consequences" of being an employer. *Standard Oil Co. v. Anderson*, 212 U.S. 215, 220 (1909); *see also Mackall v. Zayre Corp.*, 443 A.2d 98, 102 (Md. 1982) ("This Court has repeatedly recognized that, under certain circumstances, a person performing a given function, simultaneously may be the employee of two employers.") (citations omitted). Borrowed servant status typically depends on the "degree of control exercised by the third party over the servant." *See Rivera v. Prince George's Cnty. Health Dep't*, 649 A.2d 1212, 1224 (Md. Ct. Spec. App. 1994) (citing *Dippel v. Juliano*, 137 A. 514 (Md. 1927)).

Importantly, however, ". . . Maryland law permits contractual allocation of risk between a general employer and a borrowing employer under the borrowed servant doctrine[.]" *Alpha Const. & Eng'g Corp. v. The Ins. Co. of the State of Pa.*, 402 F. Appx. 818, 831 (4th Cir. 2010) (citation omitted). Thus, two employers can decide which employer will be liable for the dual employee's negligent acts. *Krzywicki v. Tidewater Equip. Co., Inc.*, 600 F. Supp. 629, 639 (D. Md. 1985), *aff'd*, 785 F.2d 305 (4th Cir. 1986) ("whatever the status of an employee under the 'borrowed servant' doctrine, the parties may allocate between themselves the risk of any loss resulting from the employee's negligent acts.") (citation omitted); *see also NVR v. Just Temps, N.C.*, 31 F. Appx. 805, 807 (4th Cir. 2002) ("if the parties contractually agreed that one or the other of them should bear the risk of a particular employee's negligent acts, that employee's status under the borrowed servant doctrine is immaterial."); *compare Hercules Powder Co. v. Harry T. Campbell Sons Co.*, 144 A. 510, 513–18 (Md. 1929) (finding supplier was not liable to

quarry owner for damages caused by detonation where quarry owner contractually agreed that the two explosive experts would be considered his "employees."), *with Sea Land Indus., Inc. v. Gen. Ship Repair Corp*, 530 F. Supp. 550, 564–65 (D. Md. 1982) (analyzing the amount of control the special employer had over a borrowed servant to determine which employer was liable where general employer's contract to maintain a crane at a special employer's Baltimore shipping terminal did not include any "borrowed servant" clause allocating liability to the special employer).

Here, the FHS nurse was employed by FHS, *see* ECF No. 25-6, and worked at the Hospital pursuant to the staffing agreement between FHS and the Hospital. S*ee* ECF No. 25-3. Although the Hospital did exercise a large amount of control over the nurse, the Hospital and FHS contractually allocated professional liability risk to FHS. *See* ECF No. 25-3 at 2:¶ 1.2, 5:¶¶ 7.0–7.3. Specifically, the parties agreed in advance that "[FHS] shall be solely responsible for the actions or omissions of any practitioner." *Id.* at 5:¶ 7.0 (emphasis added). In fact, FHS agreed that it would obtain general and professional liability insurance for its employees.[7] *Id.* at ¶ 7.3.3. Further, the contract explains that, in the event that the Hospital was found liable on the grounds of apparent agency or vicarious liability for the acts or omissions of an FHS employee, the Hospital's insurance was to be passive and secondary to FHS' insurance, which was to be active and primary. *Id.* at ¶ 8.1. While IFCC states that *Interstate Fire & Cas. Co.*, 758 F.3d at 386, applied the "right to control test" in determining borrowed servant status, IFCC ignores that the D.C. Circuit was not faced with an allocation of risk between the employers in that case. Here, the allocation changes the analysis. *See NVR, Inc.*, 31 Fed. Appx. at 808 (finding cases involving

[7] Also, in two different clauses, FHS and the Hospital agreed that "[u]nder no circumstances will [FHS] practitioners be considered employees of H[ospital]. At all times, [FHS] staff are and will be considered employees of [FHS]." *Id*. at 2:¶¶ 1.2 & 2.1.

disputes between an employee and one of the employers was not applicable to a case involving a dispute between a general employer and a borrowing employer in which the employers contractually allocated the risk of the loss that materialized); *Calomiris v. Woods*, 727 A.2d 358, 368 (Md. 1999) ("Contracts play a critical role in allocating the risks and benefits of our economy, and courts generally should not disturb an unambiguous allocation of those risks in order to avoid adverse consequences for one party."). Thus, under Maryland's borrowed servant doctrine, the FHS nurse would not qualify as a borrowed servant of the Hospital for the purposes of determining which employer is to pay for liability resulting from the nurse's negligent acts. *Cf. Goodie v. United States*, 2013 WL 968198 at * 6–7 (D. Md. Mar. 12, 2013) (explaining that the borrowed servant analysis did not apply because the government expressly agreed that it would be liable for the negligent acts of residents working at a hospital).

IFCC contends that the "allocation of risk" portion of Maryland's borrowed servant doctrine does not apply in this case because IFCC and Dimensions are not parties to the agreement between FHS and the Hospital.[8] *See* ECF No. 39 at 15–19. While the "allocation of risk" in a contract may not typically control in cases involving third parties to the contract that allocated the risk, the insurers of the employers that allocated the risk essentially step in the shoes of those employers for the purpose of this litigation. *Cf. Interstate Fire & Cas. Co.*, 758 F.3d at 382 ("Interstate Fire asserted that it 'stands in the shoes' of Nurse Hand and Progressive for purposes of the litigation."). Logically, as an insurer seeking contribution from another potential insurer, IFCC is bound by the allocation of risk agreed to by its insured. *See Travelers Indem. Co. v. Ins. Co. of N. Am.*, 519 A.2d 760, 768–69 (Md. Ct. Spec. App. 1987) (finding

[8] Notably, however, IFCC cites the staffing agreement in its analysis of whether the FHS is a borrowed servant of the Hospital. *See* ECF No. 32-1 at 24 (citing provisions in the staffing agreement for the proposition that FHS nurses were responsible for knowing the Hospital's "policies and procedures," and that the Hospital could "dismiss" any FHS nurse at "any time.").

defending insurer's subrogation rights include the insured's right to recover against another insured) *and General Cigar Co. v. Lancaster Leaf Tobacco Company*, 323 F.Supp. 931. 935 (D.Md. 1971) (finding an insurer which has paid for a loss in whole or part becomes subrogated to the rights of the insured as holder of the claim and stands in the shoes of such subrogor). In the determination of which insurance company is responsible for the employee's negligent act, if the two insured employers have allocated the risk, then the employee's status under the borrowed servant doctrine is immaterial. Thus, Dimension's reimbursement agreement with the Hospital for professional liability coverage does not cover the FHS nurse as a matter of law.[9]

[9] If the Court were to reject the parties' arguments that the borrowed servant doctrine controls and look to the dictionary definition of employee, the Court would reach the same result. Merriam-Webster's dictionary defines employee as "a person who works for another person or for a company for wages or a salary." Merriam-Webster Dictionary (2015), http://www.merriam-webster.com/dictionary/employee. Although "employee" may be unambiguous in some cases, "[a] term which is clear in one context may be ambiguous in another." *Bushey v. N. Assur. Co. of Am.*, 766 A.2d 598, 632 (Md. 2001) (citation omitted). Here, whether the FHS nurse fits into the dictionary definition of employee of the Hospital would likely be ambiguous given that FHS paid her wages but she was working inside the Hospital. *See* ECF No. 25-3 at 5:¶ 7.0. Thus, the Court would turn to extrinsic evidence to determine if the parties' intentions were clear. Here, FHS and the Hospital agreed that FHS was the nurse's employer and that it would bear the risk of liability for the nurse's negligent acts. *See id.* at 2:¶¶ 1.2 & 7.0. This evidence, even if it was to be considered extrinsic evidence of the definition of employee in this case, leaves no genuine dispute over whether the FHS nurse was an employee of the Hospital. Thus, whether the contract term "employee" is unambiguous or ambiguous, the parties' intentions are clear and the contract does not include the FHS nurse in its definition of employee for the purposes of professional liability coverage.

## IV. CONCLUSION

For the reasons discussed above, Defendant Dimensions' cross motion for summary judgment, ECF No. 35, is GRANTED, and IFCC's motion for summary judgment, ECF No. 25, is DENIED.

A separate order shall follow.

Dated: June 24, 2015

George J. Hazel
United States District Judge