IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **INTERSTATE FIRE AND CASUALTY COMPANY,** | * | |
| | * | |
| Plaintiff, | | |
| v. | * | Case No.: GJH-13-3908 |
| **DIMENSIONS ASSURANCE LTD.,** | | |
| | * | |
| Defendant. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Interstate Fire and Casualty Company ("Interstate" or "IFCC") filed this suit for equitable contribution and declaratory judgment against Defendant Dimensions Assurance Ltd. ("Dimensions" or "DAL") following an insurance dispute. ECF No. 1. The Court previously granted summary judgment in favor of Dimensions. ECF No. 43. On appeal, the United States Court of Appeals for the Fourth Circuit vacated the opinion and remanded to this Court for further proceedings. Presently pending before the Court is Interstate's Request for Entry of Judgment, ECF No. 51, Interstate's alternative renewed Cross-Motion for Summary Judgment, ECF No. 56, and Dimensions' Cross-Motion for Summary Judgment, ECF No. 53. The Court held a hearing on July 14, 2017. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, Interstate's Request for Entry of Judgment is granted, and the cross-motions are denied as moot. Judgment is now entered against Dimensions and in favor of Interstate in the total amount of $3,591,847.28, with post-judgment interest to accrue at the statutory rate pursuant to 28 U.S.C. § 1961.

I.  **BACKGROUND**

   A. **Factual Background**

The facts of this case were fully set forth in the Court's previous Opinion. ECF No. 43 at 1–5.[1] In 2012, a patient at Laurel Regional Hospital (the "Hospital") brought a medical malpractice action against the Hospital and several physicians and nurses who worked at the Hospital. *See* ECF No. 25-6. One of the nurses named in the action, Nurse Cryer, was working at the Hospital under a Staffing Agreement between her employer, Favorite Healthcare Staffing, Inc. ("FHS" or "the Agency"), and the Hospital. *See id.* at 15. Plaintiff Interstate provided a professional liability insurance policy to the Agency, covering doctors and nurses who were employed by the Agency but placed in various medical centers. *See* ECF No. 25-11. The Interstate policy stated that "[i]f there is other valid insurance (whether primary, excess, contingent, or self-insurance) which may apply against a loss or claim covered by this policy, the insurance provided hereunder shall be deemed excess insurance over and above the applicable limit of all other insurance or self-insurance." *Id.* at 11.

Defendant Dimensions provided liability protection to the Hospital through a reimbursement agreement (the "Policy" or "Reimbursement Agreement"), which forms the basis for the dispute in this action. *See* ECF No. 25-10. The Dimensions Policy affords coverage for the Hospital and other persons or entities that meet the Policy's definition of "protected persons." *See id.* Although sometimes referred to jointly as the Reimbursement Agreement, the Policy actually consists of three separate reimbursement agreements delineated as (A) "General Liability," (B) "Hospital Professional Liability," and (C) "Group Professional Liability." *See id.* at 2–3. The Hospital Professional Liability agreement, at issue here, states in relevant part that

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

"[The Hospital's] present and former employees, students, and authorized volunteer workers are protected persons while working or when they did work for you within the scope of their duties." *Id.* at 31. Similar to the Interstate policy, the Dimensions Policy states that "[i]f there are other valid and collectible sources of payment for injury or damage covered by this agreement, then this agreement will be excess reimbursement over any part of any other reimbursement or payment," but limits the excess function to three specific circumstances that were not applicable here. *Id.* at 36.[2]

When the underlying medical malpractice action arose, Dimensions refused to indemnify Nurse Cryer, claiming that, as an Agency-placed practitioner, Nurse Cryer was not an "employee" of the Hospital. *See* ECF No. 32-1 at 9. Interstate thus undertook to defend Nurse Cryer in the lawsuit, ultimately settling the case for $2.5 million and incurring $465,044.96 in defense fees and costs. *See* ECF No. 26-1 at 2. Following settlement, Interstate brought suit against Dimensions for equitable contribution and declaratory judgment, arguing that Nurse Cryer should have been covered under the Dimensions Policy as a "protected person," and Dimensions was therefore obligated to reimburse Interstate for the full amount Interstate had paid to litigate and settle the lawsuit. ECF No. 1 at 10–11.

### B. Procedural Background

The parties filed cross motions for summary judgment. ECF Nos. 26 and 34. Interstate argued that the Dimensions Policy unambiguously provided professional liability coverage to Nurse Cryer as an "employee," and provided primary "other insurance," regardless of whether

---

[2] Unlike Interstate's more expansive "other insurance" limitation, Dimensions' reimbursement scheme acted as "excess reimbursement" only when the "other reimbursement or payment" provides (1) "property or other similar compensation for damage to your work," (2) "compensation for fire damage," or (3) reimbursement for damage resulting from the use of certain auto, aircraft, or watercraft. *See* ECF No. 25-10 at 36. Dimensions has not pursued the argument that any of these circumstances applied here, or that its Policy was otherwise not the primary coverage for Nurse Cryer.

the Policy was characterized as a reimbursement agreement or otherwise. ECF No. 26. Dimensions countered that Nurse Cryer was not an employee of the Hospital as a matter of law, and that the agreement between the Hospital and Dimensions was not an insurance policy, but a "reimbursement agreement." ECF No. 34. Hence, Dimensions claimed that under this agreement, reimbursement payments were to be made to the Hospital, and only for expenses incurred or approved by the Hospital. *Id.* at 19. Because the Hospital had declined to defend Nurse Cryer, Dimensions argued, there were no expenses to be reimbursed. *Id.* at 22. This Court granted summary judgment in favor of Dimensions, holding that the Reimbursement Agreement with the Hospital did not cover Nurse Cryer, because she was not an employee of the Hospital as a matter of law. *See* ECF No. 43.

On appeal, the Fourth Circuit held that the term "employee" included workers who qualified as employees under the "right-to-control" test, which encompassed Nurse Cryer, ECF No. 51 at 19–20, and Dimensions therefore had "an independent obligation to provide coverage to those workers," *id.* at 35. The Fourth Circuit further found that the Staffing Agreement between the Hospital and the FHS Agency, to which neither Interstate, Dimensions, nor Nurse Cryer were parties, did not control whether Nurse Cryer was covered under the Dimensions Policy. *See id.* at 21–30. Accordingly, the Fourth Circuit stated that "[w]hether or not the Hospital intended to provide insurance for Agency-provided employees, Dimensions, by virtue of the policy that it issued, has an independent obligation to insure Cryer as an additional insured." *Id.* at 30 (internal citations omitted). Thus, this Court's summary judgment decision was vacated, and the case was remanded.

Interstate has now filed a Request for Entry of Judgment, and alternatively, renews its motion for summary judgment. ECF Nos. 51 and 56. Dimensions opposes Interstate's Request

and also renews its motion for summary judgment, arguing that "[n]either this Court nor the U.S. Court of Appeals for the Fourth Circuit has addressed the issue of how much, if any, must be paid to Nurse Cryer or Interstate under the terms of the Reimbursement Agreement." ECF No. 53 at 1. Dimensions asserts that they are only obligated to reimburse the Hospital under the Reimbursement Agreement, and therefore have no obligation to make any payment since the Hospital neither authorized nor made a payment regarding the claims against Nurse Cryer. *Id.* at 3. The Court disagrees.

## II.  ANALYSIS

The mandate rule is the "more powerful version of the law of the case doctrine." *Doe v. Chao*, 511 F.3d 461, 465 (4th Cir. 2007) (citing *Invention Submission Corp. v. Dudas*, 413 F.3d 411, 414 (4th Cir. 2005)). "Few legal precepts are as firmly established as the doctrine that the mandate of a higher court is 'controlling as to matters within its compass.'" *Id.* (quoting *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939)). The mandate rule "does not simply preclude a district court from doing what an appellate court has expressly forbidden it from doing." *S. Atl. Ltd. P'ship of Tennessee, LP v. Riese*, 356 F.3d 576, 584 (4th Cir. 2004). It "compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court." *Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.*, 510 F.3d 474, 481 (4th Cir. 2007). The Court must, "except in rare circumstances, implement both the letter and the spirit of the mandate," considering both the appellate court's opinion and "the circumstances it embraces." *S. Atl. Ltd. P'ship*, 356 F.3d at 584 (4th Cir. 2004) (internal citations omitted). "[A] remand proceeding is not the occasion for raising new arguments or legal theories." *Volvo Trademark*, 510 F.3d at 481. The rule also "forecloses litigation of issues decided by the district court but foregone on appeal or otherwise waived, for

example because they were not raised in the district court." *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993).

Here, the Fourth Circuit held that "Dimensions, by virtue of the policy that it issued, has an 'independent obligation to ensure [Cryer] as an additional insured." ECF No. 51 at 30. The Fourth Circuit reasoned that "[b]ecause the evidence contained in the record establishes that Nurse Cryer is the Hospital's employee under the right-to-control and borrowed-servant standards, she is a 'protected person' who qualifies for coverage under the professional liability portion of the Dimensions Policy." ECF No. 51 at 36. On remand, the Court is obligated to implement not only the letter of the appellate court mandate, but its spirit as well. *See S. Atl. Ltd. P'ship*, 356 F.3d at 584. However, because neither this Court nor the Fourth Circuit has explicitly addressed the argument, Dimensions argues that the mandate rule does not apply to their current assertion that the Policy only obligates Dimensions to reimburse the Hospital, which has neither authorized nor made payments in this case.

In Dimensions' first Motion for Summary Judgment before this Court, ECF No. 34, Dimensions raised the argument that the agreement between the Hospital and Dimensions is not an insurance policy but a "reimbursement agreement." ECF No. 34 at 18. In so arguing, Dimensions asserted that "[i]t is clear that any reimbursement is to be paid to the Hospital and only the Hospital," and that "reimbursement payments are to be . . . only for expenses incurred or approved by the Hospital." *Id.* at 19. Because this Court ruled in Dimensions' favor based on its determination that Nurse Cryer was not a covered employee under the Policy, it did not reach the secondary question of whether the reimbursement agreement was actually "an insurance policy." Interstate then appealed the Court's decision to the Fourth Circuit, and addressed this argument again in its appellate brief, stating that "[t]he Dimensions Policy provides primary

'other insurance' regardless of whether it can be characterized as [a] reimbursement policy," and that "although the insured technically may be required to make the initial payment to settle a claim or satisfy a judgment, Dimensions is ultimately *required* by the terms of its policy to reimburse the insured for this payment." Doc. 11[3] at 66 (emphasis in original). In Dimensions' appellate brief, Dimensions focused nearly exclusively on the issue of whether Nurse Cryer was a covered employee under the Policy, but also dedicated a lengthy footnote to its arguments regarding its characterization of the reimbursement agreement:

> Dimensions continues to hold that the Reimbursement Agreement is a funding agreement and not an insurance policy. . . . This is reflected by the reimbursement language relating who is to be reimbursed. It is clear that any reimbursement is to be paid to the Hospital and only the Hospital, and in the case of expense[s] incurred by other protected persons, only those expenses incurred and authorized by the Hospital. . . .

Doc. 18 at 8.

It follows, therefore, that the Fourth Circuit had these arguments before it in rendering judgment, and, in that context, the Fourth Circuit's decision used broad language, unequivocally stating that Dimensions "has an independent obligation to provide coverage" to Nurse Cryer. ECF No. 51 at 30, 35; *see also id.* at 16 ("[W]e still conclude that the [Dimensions] Policy provides coverage for the claims asserted against Nurse Cryer."). Moreover, the argument that the Reimbursement Agreement was not actually an insurance policy was, at the very least, implicitly foreclosed by the plain language of the Fourth Circuit opinion. *See* ECF No. 51 at 9 ("Appellee Dimensions Assurance Ltd., an insurance company wholly owned by the company that owns the Hospital, issued the Hospital the liability *insurance policy* (the "Policy") at issue in

---

[3] Documents on the appellate record are cited herein as "Doc." and reference Appeal No. 15-1801. *See Interstate Fire & Cas. Co. v. Dimensions Assurance Ltd.*, 843 F.3d 133, 136 (4th Cir. 2016). Pin cites to these documents refer to the page numbers generated by the U.S. Court of Appeals for the Fourth Circuit electronic filing system.

this case.") (emphasis added). Therefore, while the Fourth Circuit may not have expressly determined that the Hospital was not required to make or authorize payment before Dimensions was obligated to pay for Nurse Cryer, the Fourth Circuit did so by necessary implication.[4] Thus, under the mandate rule, this Court finds that Dimensions is obligated to pay for the underlying expenses in this case.

Even if it could be argued that the mandate of the Fourth Circuit directed this Court to reopen and re-assess whether the "other requirements" of the Policy were satisfied, it is clear that they were. "In Maryland insurance policies ordinarily are construed in the same manner as contracts generally." *Collier v. MD-Individual Practice Ass'n, Inc.*, 327 Md. 1, 5 (1992). The Dimensions Policy clearly provides that "we agree that we will reimburse you for amounts any protected person is legally required to pay as damages for covered claims or suits resulting from professional injury occurring while this agreement is in effect." ECF No. 25-10 at 28. Dimensions argues that the use of the word "you" — as in the Hospital — means that the only party having a right to reimbursement is the Hospital. ECF No. 53-1 at 3–4. Thus, Dimensions contends, because the Hospital did not "authorize" a payment to Nurse Cryer, Dimensions is not obligated to insure Nurse Cryer.

Such a reading defies the plain language of the Policy. The Dimensions Policy agrees to disburse funds for any amounts a protected person is legally required to pay. Nurse Cryer, a protected person, was legally required to pay the cost of settlement and associated defense fees in the underlying medical malpractice action. Dimensions' insistence that payments "must first be

---

[4] Dimensions highlights the portion of the Fourth Circuit opinion stating that, "if the other requirements of the Policy are satisfied, the claims asserted against Nurse Cryer in the Underlying Action fall within the scope of the professional-liability section of the Policy." ECF No. 51 at 7. Dimensions argues that this statement indicates that the Fourth Circuit was leaving it for this Court to determine whether "the other requirements of the Policy are satisfied." But the very next sentence in the Fourth Circuit's opinion reads, "[t]he question then, is whether Cryer qualifies as a protected person under that section of the Policy," *id.*, indicating that was the remaining question, which the Fourth Circuit has now answered.

approved by" the Hospital is a misleading, if not inaccurate, interpretation of the contractual language. While the Policy provides that Dimensions "will not directly pay" for the defense or settlement of claims, and Dimensions "agree[s] to reimburse you for expenses authorized by you" ECF No. 25-10 at 29, nowhere does the Policy bestow the unilateral authority upon the Hospital to approve or reject reimbursement of amounts a protected person is otherwise legally required to pay. Moreover, at the motions hearing, Dimensions all but conceded that the reason that coverage of Nurse Cryer was initially not authorized was because Dimensions did not believe Nurse Cryer to be a covered employee under the Policy.[5] As the Fourth Circuit has determined that Nurse Cryer is a covered employee as a matter of law, that effectively ends the inquiry.

In support of its Motion for Summary Judgment, Interstate submitted evidence that the underlying settlement was $2.5 million, and that associated defense fees and costs were $465,044.96. *See* ECF No. 26-1 at 1–260. Interstate also requests pre-judgment interest in the amount of $626,802.32 and post-judgment interest to accrue at the rate of 0.8% per annum from the day this Court enters judgment until judgment is satisfied by Dimensions. ECF No. 51 at 2. Dimensions did not dispute the reasonableness of the settlement agreement or the costs of the defense at the summary judgment stage, and has not disputed Interstate's claimed damages in response to Interstate's Motion for Entry of Judgment. Having now ruled on the issue of liability, judgment is entered against Defendant Dimensions and in favor of Interstate in the total amount of $3,591,847.28 — representing the $2,500,000 settlement, $465,044.96 in defense fees and costs, and $626,802.32 in pre-judgment interest — with post-judgment interest to accrue at the statutory rate, pursuant to 28 U.S.C. § 1961.

---

[5] At the motions hearing, Dimensions also highlighted the Policy language "[s]ubject to the limitations and restrictions set forth in this Agreement . . .," ECF No. 25-10 at 28, but was unable to actually identify additional restrictions or grounds for denying coverage beyond what has been addressed in this case.

## III. CONCLUSION

For the foregoing reasons, Interstate's Request for Entry of Judgment is granted, and the cross-motions are denied as moot. A separate Order shall issue.

Date: July 21, 2017

GEORGE J. HAZEL
United States District Judge